UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
DEBORAH L. BOARDMAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
Fax: (410) 962-2577
MDD_DLBChambers@mdd.uscourts.gov

September 22, 2020

LETTER TO COUNSEL

      RE:   *Estelle G. v. Saul*
              Civil No. DLB-19-1537

Dear Counsel:

On May 23, 2019, plaintiff Estelle G. petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claim for Disability Insurance Benefits. ECF No. 1. I have considered the parties' cross-motions for summary judgment, and plaintiff's response. ECF No. 14 ("Pl.'s Mot."), ECF No. 17 ("Def.'s Mot."), ECF No. 19 ("Pl.'s Resp."). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the Commissioner's decision in part, and remand the case to the Commissioner for further consideration. This letter explains my rationale.

Plaintiff filed her claim for benefits on December 14, 2015, alleging a disability onset date of July 31, 2014. Administrative Transcript ("Tr.") 216. Her claim was denied initially and on reconsideration. Tr. 122-25, 127-28. A hearing was held on January 25, 2018, before an Administrative Law Judge ("ALJ"). Tr. 33-97. Following the hearing, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 12-24. The Appeals Council denied plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA.

The ALJ found that plaintiff had the following severe impairments: "Meniere's/episodic vertigo, vestibular migraines, disorder of sacrum, major depressive disorder, Posttraumatic Stress Disorder (PTSD), and anxiety." Tr. 15. Despite these impairments, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb ramps or stairs. She can never climb ladders, ropes or scaffolds. She can occasionally balance on uneven surfaces. She can occasionally stoop, kneel, crouch and crawl. She can have no exposure to dangerous machinery or unprotected heights. She is limited to simple, routine tasks. Time off task can be accommodated by normal breaks. She can occasionally interact with supervisors, coworkers, and

*Estelle G. v. Saul*
Civil No. 19-1537-DLB
September 22, 2020
Page 2

> the public.  She can have few changes in the routine work setting and simple, work-related decisions.

Tr. 17.  After considering the testimony of a vocational expert ("VE"), the ALJ determined that plaintiff is unable to perform her past relevant work as a children's attendant, data entry, membership solicitor, or receptionist, but that she could perform jobs existing in significant numbers in the national economy.  Tr. 22-23.  Therefore, the ALJ concluded that plaintiff was not disabled.  Tr. 24.

Plaintiff raises one primary argument on appeal: that the ALJ's decision ran afoul of the Fourth Circuit's decision in *Mascio v. Colvin*, 780 F.3d 632, 640 (4th Cir. 2015).  Pl.'s Mot. 9-18.  I agree.  In remanding for further explanation, I express no opinion as to whether the ALJ's ultimate conclusion that plaintiff is not entitled to benefits is correct.

In *Mascio*, the Fourth Circuit determined that remand was appropriate for three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of the plaintiff's "moderate difficulties" in concentration, persistence, or pace.  780 F.3d at 638.  The ability to concentrate, persist, or maintain pace is one of four broad functional areas that an ALJ is required to consider when evaluating a claimant's mental impairments.[1]  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(A)(2)(b); *see* 20 C.F.R. § 416.920a (explaining the "special technique" for evaluating the severity of a claimant's mental impairments).  The ALJ assigns a rating based on the extent to which the claimant's impairment "interferes with [her] ability to function independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. § 416.920a(b), (c)(2).  The ALJ uses a five-point scale to rate a claimant's degree of limitation in the four areas: none, mild, moderate, marked, or extreme.  *Id*. § 416.920a(c)(4).  A moderate limitation signifies that the claimant has only a fair ability to function in the relevant area of mental functioning.  20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(F)(2)(c).

The Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the VE – and the corresponding RFC assessment – did not include any mental limitations other than unskilled work, despite the fact that the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace at step three.  780 F.3d at 637-38.  The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work."  *Id*. at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted).  In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace."  *Id*.  Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it

---

[1] The other three areas are: (1) the ability to understand, remember, or apply information; (2) the ability to interact with others; and (3) the ability to adapt or manage oneself. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(A)(2)(b) (the "paragraph B" criteria).

*Estelle G. v. Saul*
Civil No. 19-1537-DLB
September 22, 2020
Page 3

held that absent such an explanation, remand was necessary. *Id*. The Court recently reiterated that *Mascio* "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020) (finding that the ALJ adequately explained the RFC's mental limitations where the RFC did not include a specific limitation addressing the plaintiff's moderate limitation in concentration, persistence, or pace).

In this case, the ALJ found that plaintiff had moderate limitations in the functional area of maintaining concentration, persistence, or pace at step three. Tr. 16. The ALJ's analysis stated:

> The claimant contended that she has limitations in concentrating generally, concentrating longer than 15 minutes before requiring a break, watching TV, focusing generally, following instructions, completing tasks, and avoiding distractions. On the other hand, the claimant said that she is also able to prepare meals, read, manage funds, use the internet, and handle her own medical care. Additionally, the record fails to show any mention of distractibility and an inability to complete testing that assesses concentration and attention. Based on this evidence overall, the claimant has no more than moderate limitation in [the functional area of concentration, persistence, or pace].

*Id*. (internal citations removed).

The RFC analysis contains a summary of plaintiff's testimony, medical records, and opinion evidence. Tr. 17-22. The ALJ noted plaintiff's testimony that she had difficulty concentrating. Tr. 17. The ALJ also noted that plaintiff's therapist observed plaintiff's difficulty concentrating, Tr. 18, and that plaintiff "was assessed with moderate mood disturbances, moderate anxiety, mild thinking/cognition/memory/concentration problems," Tr. 19.

Regarding the opinion evidence, the ALJ gave "some weight" to therapist Amy Sykes's assessment of "mild to moderate limitations," but "little weight" to the therapist's opinion that plaintiff was markedly limited in several mental areas. Tr. 20; *see* Tr. 340 (Sykes opining that plaintiff had a "moderate-to-marked" limitation in her ability to "maintain attention and concentration for extended periods," "perform activities within a schedule and consistently be punctual," and "complete a workday without interruptions from psychological symptoms"). The ALJ explained that, "during the period of treatment, the claimant was taking college-level physical therapy courses, and at times had success in those classes," and that her treatment records were consistent with "mild to moderate" limitations, but not marked limitations. Tr. 20. The ALJ also gave little weight to social worker Keyza Turner's opinion that plaintiff's mental impairments interfered with her ability to work and again noted, among other things, that plaintiff had "completed some college credit courses for which she indicated spending 6 hours a week in school and 8 hours a day doing school work otherwise." Tr. 20. The ALJ gave little weight to therapist Vel Humbert's opinion that plaintiff's mental impairments were "severe enough to preclude work for one year due to stress, trauma, labile mood, and increased anxiety" because, among other reasons, Humbert's letter was "addressed to whether the claimant ha[d] the focus and

concentration to pursue college coursework, and not simple work and the undersigned has so limited he claimant." Tr. 21. The ALJ gave "some weight" to Dr. Raynell Johnson's psychological assessment and plaintiff's 30/30 mini mental status examination score. *Id.* Dr. Johnson noted that plaintiff "could not keep up" with her classes, Tr. 483, that plaintiff could not "maintain concentration in completing tasks in everyday household routines," Tr. 486, and that plaintiff would try to read but "[could not] stay focused," Tr. 487. The ALJ explained that her assignment of "some weight" was due to "the claimant's ability at times to pass college credit courses and her general functional ability as noted throughout progress notes from her various mental health treatment appointments." Tr. 21. The ALJ did not explain which parts of Dr. Johnson's assessment she agreed or disagreed with, but she did find that plaintiff was "more limited in concentration, persistence and pace and in her ability to understand, remember, and apply information" than was indicated from her mini mental status examination score. *Id.* The ALJ similarly gave "some weight" to the opinions of the State agency consultants that plaintiff had mild psychiatric symptoms. *Id.* The ALJ stated that she "provide[d] more restrictions than these opinions would warrant based on the claimant's testimony." *Id.*

The ALJ then summarized the reasons for the assessed RFC:

The claimant's mental restrictions in the residual functional capacity assessed are no more limited because of the claimant's intermittent use of medication, which was reported as due in part to the claimant's desire not to take mental health medication, rather than, as she testified, was due to things such as housing problems, the claimant's ability at times to engage in college level work, at various times at least partially successfully after the alleged onset date,[2] the claimant's relatively normal mental status examinations and reports of her functioning in progress notes, and her indications in those notes that the things that bring on her mental symptoms appear to be stress related, most regularly school, and her relatively capable activities of daily living as described at the hearing.[3] Based on

---

[2] Although the ALJ frequently mentioned plaintiff's enrollment in college courses, it is unclear what conclusions the ALJ drew from her partial success. Plaintiff testified that she was enrolled for a total of three semesters, six credit hours each, and received credit for only one semester. Tr. 61-62. She withdrew from the other semesters because of "concentration problems." Tr. 61. The ALJ cited to therapy treatment records that noted "school," Tr. 22 (citing Tr. 696, 701, 703), but those treatment records do not discuss plaintiff's abilities or limitations. The ALJ discounted therapist Humbert's opinion as irrelevant because it addressed plaintiff's inability to pursue college coursework due to issues with concentration and focus, and the ALJ limited plaintiff to simple, repetitive work. However, the ALJ did not connect plaintiff's limitations with concentration, persistence, and pace to task complexity. The ALJ did not support her step-three finding that plaintiff was moderately limited in her ability to concentrate, persist, and maintain pace by citing to plaintiff's college courses.

[3] At the hearing, plaintiff testified that she "didn't go anywhere or do anything without [her] spouse," Tr. 72, and that she and her husband did chores like laundry together, Tr. 78. She described her daily routine as "stay[ing] in bed extended periods of time for various pain" and brushing her teeth. Tr. 74. She testified that either she or her husband would "[p]repare simple meals for the both of [them]," and that she would watch tv. *Id.* Plaintiff additionally testified that she might not shower for a week. Tr. 77-78. At step three,

*Estelle G. v. Saul*
Civil No. 19-1537-DLB
September 22, 2020
Page 5

>       all of this, moderate limitations and restrictions are appropriate for the claimant's mental functioning, at most.

Tr. 22.

The ALJ's analysis is missing an explanation of how plaintiff could stay on task despite being moderately limited in her ability to concentrate, persist, and maintain pace. The ALJ found that plaintiff could perform simple, routine tasks, but "[a]n ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question [and accompanying RFC] to simple, routine tasks or unskilled work." *Mascio*, 780 F.3d at 638. As the Fourth Circuit explained, there is a difference between the ability to perform simple, routine tasks and the ability to stay on task. The *Mascio* Court was concerned with a claimant's ability to stay on task despite her moderate limitations in concentration, persistence, and pace. *Id*. While an ALJ may cure a *Mascio* defect by offering an explanation for why a particular claimant does not require an RFC limitation to accommodate her moderate limitations, *id*., the ALJ here did not do so.

The Commissioner argues that "the substantial evidence the ALJ discussed and relied upon does not show signs of difficulties with regard to concentrating, persisting, or maintaining pace (or the other functional domains) that would preclude [plaintiff] from performing work within the parameters of the RFC assessment." Def.'s Mot. 11. There may be evidence that supports the ALJ's conclusion, but the ALJ did not offer an explanation connecting the evidence to her conclusion. Indeed, the ALJ specifically cited to record evidence of plaintiff's difficulties with concentration and explicitly found that plaintiff was "more limited" in the area of concentration, persistence, and pace than was indicated in Dr. Johnson's psychological assessment.

Furthermore, although the ALJ stated that "[t]ime off task can be accommodated by normal breaks," she provided no analysis or explanation of how "normal breaks" would be sufficient to address plaintiff's concentration issues. Merely limiting the plaintiff to work that involves simple, routine tasks with normal breaks does not account for her moderate difficulties in concentration, persistence, and pace. *See Ludlow v. Comm'r. Soc. Sec.,* Civil No. SAG-15-3044, 2016 WL 4466790 (D. Md. Aug. 23, 2016) ("the restriction to working in 2-hour intervals does not adequately account for a moderate limitation in the ability to stay on task, absent further explanation."). In the absence of explanation, I am unable to ascertain whether the RFC assessment would permit a person with Plaintiff's limitations to sustain a competitive pace of work, with only normal breaks.

For these reasons, plaintiff's motion for summary judgment, ECF No. 14 is DENIED, and defendant's motion for summary judgment, ECF No. 17, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED IN PART due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion.

---

the ALJ noted plaintiff's testimony from her function report, including that she listened to audio books and watched television, could take public transportation, go shopping, prepare meals, use the internet, and handle self-care and personal hygiene. Tr. 15-16; *see also* Tr. 262 (plaintiff noting that her "ability to keep [her] attention concentrated on [audiobooks, reading, watching tv] [was] greatly diminished").

*Estelle G. v. Saul*
Civil No. 19-1537-DLB
September 22, 2020
Page 6

     Despite the informal nature of this letter, it should be flagged as an opinion. A separate order follows.

                          Sincerely yours,

                          /s/

                          Deborah L. Boardman
                          United States Magistrate Judge